UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                            Case No.: 12-70632-ast

FREDERICK L. IPPOLITO,                  Chapter 7

                    Debtor.
----------------------------------------------------------------x
AMERICAN HONDA FINANCE CORP.

                    Plaintiff,           Adv. Pro. No.: 12-8403-ast
          - against -

FREDERICK L. IPPOLITO,

                    Defendant.
----------------------------------------------------------------x

## DECISION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

       Pending before the Court is the motion of the defendant, Frederick L. Ippolito ("Ippolito"), seeking dismissal of American Honda Finance Corp.'s ("Honda") complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP" or "Rules"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  For the reasons more fully set forth below, Ippolito's motion is granted in part and denied in part.

### JURISDICTION

       This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I) and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 1, 2012, Honda commenced this adversary proceeding by filing a complaint against Ippolito (the "Complaint").  [dkt item 1]  The Complaint alleges four causes of action, all under 11 U.S.C. § 523(a)[1], and all arising out of Honda's advancement of credit to Crazy Freddy's Motorsports, Inc. d/b/a Crazy Freddy's Sunrise Honda ("Crazy Freddy's"). These advances enabled Crazy Freddy's to purchase new and used motorcycles.  Debtor / Defendant, Ippolito, was the sole owner and primary manager of Crazy Freddy's at all relevant times.[2]  On September 2, 2005, Ippolito executed a Continuing Personal Guaranty (the "Guaranty"),[3] whereby he personally and unconditionally guaranteed payment for and the full and faithful performance of Crazy Freddy's obligations under "any and all agreements now existing or hereafter executed by and between [Crazy Freddy's] and [Honda]."  Complaint at ¶ 16.  Subsequently, on September 21, 2005, Ippolito executed a Wholesale Finance Agreement (the "Agreement")[4] on behalf of Crazy Freddy's.  Complaint at ¶¶ 9, 10.

Pursuant to the Agreement, Honda made periodic advances to Crazy Freddy's for the purchase of inventory either "ordered by or shipped to" Crazy Freddy's.  Complaint at ¶ 12.  The Complaint, however, is vague as to the mechanics by which Crazy Freddy's obtained floor plan advances, but does allege that Crazy Freddy's secured the advances made by granting Honda a

---

[1] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").

[2] Ippolito was also Crazy Freddy's president, secretary, and treasurer and "controlled the sale and the application of funds regarding all sales transactions at Crazy Freddy's…."  Complaint at ¶¶ 9, 22  As this Court is ruling on a pre-answer motion to dismiss, all factual inferences are drawn in favor of Honda.  *See* legal analysis *supra*.

[3] A copy of the Guaranty is annexed to the Complaint as Exhibit "C".

[4] A copy of the Agreement is annexed to the Complaint as Exhibit "A".

security interest in the purchased inventory.[5]  Complaint at ¶ 10.  Crazy Freddy's made monthly

payments to repay a portion of the amounts advanced by Honda.  Complaint at ¶ 12.  Honda

provided Crazy Freddy's with monthly billing statements, identifying the principal balance of

each advance, each vehicle for which an advance was made, and any additional charges due (the

"Dealer Statements").  Complaint at ¶¶ 12-14; Agreement at ¶¶ 3.1, 3.5.

       Crazy Freddy's and Ippolito were obligated to advise Honda in writing of any

discrepancies in the Dealer Statements; however, neither Crazy Freddy's nor Ippolito ever

disputed their accuracy.  Complaint at ¶ 15; Guaranty at p.1.  Both Crazy Freddy's and Ippolito

were also required to keep complete and accurate records, including the date of sale and identity

of each purchaser of each vehicle sold, and to provide this and other financial information to

Honda upon request.  Agreement at ¶¶ 6.2, 6.6; Guaranty at p.1.  Further, upon the sale of any

vehicle, Crazy Freddy's and Ippolito were obligated to repay the principal advanced for each

vehicle; failure to remit this payment within a prescribed time period, measured from the date of

sale, would result in Honda's designation of the vehicle(s) as sold "out of trust."  Complaint at

¶¶ 12-13, 17; Guaranty at p.1.

       To monitor Crazy Freddy's and Ippolito's compliance with the terms of their respective

agreements, Honda conducted periodic surprise audits whereby Honda's auditors "would seek to

locate each and every motor vehicle listed in [Honda's] records."  *See* Complaint at ¶¶ 18, 33.

After one such audit in February 2009, "Crazy Freddy's was discovered to have sold

approximately 164 vehicles 'Out of Trust' plus other collateral," causing Honda a loss of

$1,315,693.00. Complaint at ¶¶ 19, 21.  Thereafter, Honda declared a default and demanded the

---

[5] These types of agreements are commonly referred to as "floor plan financing agreements".  Complaint at ¶ 17; *see also In re Jones*, 2011 WL 1549060, at *1 n.1 (Bankr. E.D.N.Y. Apr. 21, 2011); *Manheim's Pa. Auction  Svcs., Inc. v. Lavender* (*In re Lavender*), 2009 WL 367493, at *1 (Bankr. E.D.N.Y. Feb. 9, 2009), *aff'd*, 2010 WL 933745 (E.D.N.Y. Mar. 9, 2010), *aff'd*, 399 F. App'x 649 (2d Cir. 2010).

return of all its remaining inventory.  Crazy Freddy's subsequently returned all of Honda's

remaining inventory.  Complaint at ¶ 20.

In the Complaint, Honda alleges that Ippolito, in his capacity as "active manager" of

Crazy Freddy's, sold these 164 vehicles "out of trust" and failed to pay the owed advances by

way of "intentional misconduct."  Complaint at ¶¶ 22, 31.  Honda further contends that Ippolito

had "actively deceived, concealed and misled" Honda's auditors in failing to account for and

report these sales and personally benefited from this deception.  Complaint at ¶¶ 34-36.

Honda's four causes of action may be summarized as follows:

- Ippolito should not be granted a discharge pursuant to § 523(a)(2)(A) in that he obtained advances of funds from Honda by actual fraud, false representation, and false pretenses;

- Ippolito should not be granted a discharge pursuant to § 523(a)(4) due to his commission of larceny;

- Ippolito should not be granted a discharge pursuant to § 523(a)(6) for his commission of a willful and malicious injury to Honda; and

- Honda is entitled to direct entry of a money judgment against Ippolito pursuant to §§ 105(a) and 523(a) if the Court sustains any or all of Honda's causes of action.

On November 30, 2012, in lieu of an answer, Ippolito filed a Motion to Dismiss the

Complaint and a Memorandum of Law in Support (collectively, the "Motion to Dismiss") [dkt

items 5, 6], seeking dismissal of the Complaint in its entirety and/or the dismissal of each of the

first three individual causes of action listed above under Rule 12(b)(6).  Specifically, Ippolito

argues that with respect to § 523(a)(2)(A), the Complaint fails to identify any false

misrepresentation upon which Honda relied when extending credit to Crazy Freddy's, and, thus,

Honda has failed to plead fraud with particularity.  Concerning Honda's § 523(a)(4) cause of

action, Ippolito asserts that the Complaint fails to provide any specific facts or circumstances

showing that he or Crazy Freddy's obtained fund advances unlawfully or used those funds for

Ippolito's personal benefit.  Ippolito further contends that Honda has failed to state a claim for a willful or malicious injury under § 523(a)(6) in that there are no allegations or supporting documents that demonstrate Ippolito's intention to injure Honda or its property.

On December 13, 2012, Honda filed a brief in opposition to the Motion[6] (the "Opposition") [dkt item 7], asserting that the Complaint sufficiently pleads a plausible claim for relief under each of the causes of action.  Ippolito did not file a reply.

## DISCUSSION

### 1.  *Legal Standard for the Motion to Dismiss*

Ippolito bases his request for dismissal of this adversary proceeding on Rule 12(b)(6), as incorporated by Bankruptcy Rule 7012.  This Court has previously addressed the application of Rule 12(b) and the flexible plausible pleading standard established by the Supreme Court.  *See In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011), discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *see also In re Jones*, 2011 WL 1549060, at *2-3 (Bankr. E.D.N.Y. Apr. 21, 2011); *In re Coletta*, 391 B.R. 691, 693-94 (Bankr. E.D.N.Y. 2008).

Under the U.S. Supreme Court's *Iqbal/Twombly* analysis, a complaint must contain sufficient factual matter, which, when accepted as true, is adequate to "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the relief sought.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability.  *Iqbal*, 556 U.S. at 678.

---

[6] Honda's opposition incorrectly states that the Motion to Dismiss requests dismissal of the Complaint as a whole, but fails to specifically call for dismissal of each individual cause of action.  In fact, the Motion to Dismiss requests the dismissal of the first three causes of action, as well as dismissal of the entire complaint.

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, quoting *Twombly*, 550 U.S. at 557 (internal citations omitted).

Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a Rule 12(b)(6) motion, a court is to accept as true all factual allegations in the Complaint and draw all inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). However, as the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, a court need not "accept as true a legal conclusion couched as a factual allegation," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79, citing FED. R. CIV. P. 8(a)(2).

When a complaint alleges fraud or mistake, it must satisfy the heightened pleading requirements of Rule 9(b), made applicable here by Bankruptcy Rule 7009. *See In re Henein*, 257 B.R. 702, 706 (E.D.N.Y. 2001). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*, quoting FED. R. CIV. P. 9(b).

To satisfy the first part of Rule 9(b), the particularity requirement, "the pleading must set forth the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *Id.,* citing *Acito v. IMCERA Group*, 47 F.3d 47, 51-52 (2d Cir. 1995). To satisfy the second part of Rule 9(b), "state of mind can be 'averred generally,'

[but] must not be mistaken for 'a license to base claims of fraud on speculation and conclusory allegations.'" *Id.*, quoting *Acito*, 47 F.3d at 52. Thus, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Id.* This inference may be established either "(a) by alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito*, 47 F.3d at 52, quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Further, allegations of fraud may be based upon information and belief for "facts [] peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990), citing *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986). For matters peculiarly within an adverse party's knowledge, the supporting allegations must contain a statement of the facts upon which the belief is founded, *Campaniello Imports, Ltd. v. Saporiti, S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997), necessary in order to fairly apprise the defendant of the charges levied against him so that he may prepare a sufficient answer to them. *In re Rosen*, 132 B.R. 679, 683 (Bankr. E.D.N.Y. 1991).

In deciding Ippolito's Motion to Dismiss, this Court must limit its review to facts and allegations contained in the Complaint, documents incorporated into the Complaint by reference or attached as exhibits, and matters of which this Court may take judicial notice. *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also*, *Int'l Tobacco Partners, Ltd.*, 462 B.R. at 385 (courts may "consider documents that are integral to the complaint in deciding a motion to dismiss.").

**2.  *Dischargeability under 11 U.S.C. § 523(a)(2)(A) - False Pretenses, False Representation, and Actual Fraud***

Section 523(a)(2)(A) provides that a debt is nondischargeable under circumstances where the debt is, "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A). False pretenses, false representation, and actual fraud represent three different concepts, and thus are treated as three separate causes of action.  *In re Crossfield*, 2012 WL 3637919, at *3 (Bankr. E.D.N.Y. Aug. 22, 2012); *In re Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  Honda generally seeks relief under § 523(a)(2)(A); thus, this Court must evaluate Honda's first cause of action under each alternative prong.

*A. False Representation*

In order to establish a claim for false representation under § 523(a)(2)(A), a plaintiff must demonstrate by a preponderance of the evidence that: "(1) the [Debtor] made a false or misleading statement (2) with intent to deceive (3) in order for the [P]laintiff to turn over money or property to the [Debtor]."  *In re Crossfield*, 2012 WL 3637919, at *4, quoting *In re Janac*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009) (alteration in original).  Moreover, a cause of action for false representation requires an express misrepresentation or statement, either written or oral. *In re Gabor*, 2009 WL 3233907, at *4 (Bankr. S.D.N.Y. Oct. 8, 2009); *In re Weinstein*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983).

Here, Honda has failed to identify an express misrepresentation made by Ippolito, either written or oral.[7]  Accordingly, it is clear that Honda has failed to plead a plausible *prima facie*

---

[7] Accepting all the factual allegations in the Complaint as true and drawing all inferences in favor of Honda, at best, Honda has demonstrated that: 1) Ippolito has failed to notify Honda of any discrepancies in the Dealer Statements; 2) Ippolito failed to report to Honda and/or omitted information regarding vehicles sold "out of trust"; and

claim for false representation.  Therefore, this Court will only analyze Honda's cause of action under §523(a)(2)(A) as it relates to actual fraud and false pretenses.

      *B. Actual Fraud*

      Actual fraud under § 523(a)(2)(A), which refers to common law fraud, requires proof of the "five fingers" of fraud.  *Evans v. Ottimo*, 469 F.3d 278, 283 (2d. Cir. 2006); *In re Crossfield*, 2012 WL 3637919, at *5.  To establish a claim for actual fraud, a plaintiff must establish: (1) that the defendant made a false representation, (2) the defendant knew it was false at the time is was made, (3) that the defendant made the representation with the intention of deceiving the plaintiff, (4) that the plaintiff justifiably relied on the representation, and (5) the plaintiff sustained damages that were proximately caused by the false material representation.  *In re Olwan*, 312 B.R. 476, 482 (Bankr. E.D.N.Y. 2004); *In re Giuffrida*, 302 B.R. 119, 123 (Bankr. E.D.N.Y. 2003).  For §523(a)(2)(A) actual fraud purposes, a misrepresentation may be either express or implied.  *In re Wintermute*, 2010 WL 3386946, at *5 (Bankr. S.D.N.Y. Aug. 25, 2010); *see also Giuffrida*, 302 B.R. at 125 (finding that the use of a credit card carried with it an implied promise to repay); *In re Reider*, 178 B.R. 373, 376 (Bankr. S.D.N.Y. 1995) ("[O]ne who undertakes to perform an obligation…impliedly represents that he intends to perform."), citing Restatement (Second) of Torts § 530, Comment c (1977), *aff'd* 194 B.R. 734, 737 (S.D.N.Y. 1996), *aff'd without op.*, 116 F.3d 465 (2d. Cir. 1997).  Where an objection to dischargeability is based on an implied misrepresentation, a plaintiff must demonstrate that the defendant had no intention of performing, *In re Cacciatore*, 1998 WL 412644, at *2 (E.D.N.Y. July 21, 1998), or did not have a reasonable basis to believe that he could perform at the time the promise was made.  *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998).

---

3) Ippolito failed to keep complete and accurate records, all of which Honda's auditors failed to discover until February 2009.  None of the foregoing qualifies as an express misrepresentation or statement.

Plaintiff has failed to meet its *Iqbal*/*Twombly* burden with respect to Honda's first cause of action under § 523(a)(2)(A) by pleading facts which, if accepted as true, would allow the Court to draw the reasonable inference that Ippolito is liable for actual fraud.  As discussed above, Honda has failed to identify any express misrepresentation; and, while an implied misrepresentation may suffice for purposes of actual fraud, Honda has not alleged that Ippolito did not intend to or did not have a reasonable basis to believe that he could perform his obligations under the terms of the Agreement or the Guaranty when they were entered into. Therefore, Honda has failed to properly plead a cause of action for §523(a)(2)(A) actual fraud.

*C. False Pretenses*

A cause of action for false pretenses "involves an implied misrepresentation or conduct intended to create and foster a false impression." *Khafaga*, 419 B.R. 539, 546 (Bankr. E.D.N.Y. 2009), quoting *Weinstein*, 31 B.R. 804 at 809.  To demonstrate entitlement to relief for a claim of false pretenses, a plaintiff must establish that: "(1) the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant[]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[]; (4) which wrongfully induced the plaintiff[] to advance money, property, or credit to the defendant. [8]" *Id.*,

---

[8] Neither the language of § 523 nor case law mandate that the advance of money, property, or credit must be made directly to the defendant.  *See* 11 U.S.C. § 523(a)(2)(A) ("A discharge under [sections granting discharge] does not discharge an individual debtor from any debt…for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained by* false pretenses…") (emphasis added); *see, e.g., Khafaga*, 419 B.R. at 546 (where the defendant argued that the complaint failed to allege that the defendant wrongfully induced the plaintiff into making any advance, either to the individual defendant or to his wholly owned enterprise, the court determined that the operative question under § 523(a)(2)(A) on a cause of action for false pretenses is whether "the Plaintiff has adequately alleged that [the Plaintiff] was induced by the Defendant's alleged omissions and material misrepresentations to advance money, property, services, or credit, resulting in the debt that is the subject of the complaint."); *In re Baietti*, 189 B.R. 549, 555-56 (Bankr. D. Me. 1995) (where the individual defendant's wholly-owned corporation acquired property of the plaintiff via false pretenses pursuant to a floor plan financing agreement, the court concluded that the individual debtor's participation in and receipt of an indirect benefit from the transaction was sufficient to support a determination that the debt was non-dischargeable under § 523(a)(2)(A)); *In re Weinstein*, 31 B.R. at 810 (holding that that the individual defendant's failure to dispel the false impression which caused the plaintiff to advance $100,000.00 to a corporation which the defendant controlled, constituted a non-dischargeable debt for false pretenses).

quoting *Hambley*, 329 B.R. at 396. (alteration in original).  Moreover, where a duty to disclose

exists, silence may constitute false pretenses.  *In re Behnam*, 2005 Bankr. LEXIS 435, at *20-21

(Bankr. E.D.N.Y. Mar. 17, 2005).

 The Court has determined that Honda has met its *Iqbal/Twombly* burden with respect to a

false pretenses cause of action under § 523(a)(2)(A).  Honda has narrowly but adequately plead

that Ippolito knowingly and willingly failed to disclose to Honda the sale of vehicles "out of

trust" in violation of Ippolito's duty under the terms of the Guaranty, in order to induce Honda to

continue to make advances to Crazy Freddy's; these continued advances are alleged to have

personally benefited Ippolito by allowing him to "extend the time during which Crazy Freddy's

and Ippolito engaged in their criminal activity and corporate and personal malfeasance," and

resulted in or increased the amount of loss suffered by Honda.  Complaint at ¶¶ 35, 36.

 This Court has also determined that Honda's allegations made in support of its cause of

action for false pretenses under § 523(a)(2)(A) satisfies Honda's Rule 9(b) heightened pleading

requirements.  The Complaint identifies Ippolito's duty to disclose the sale of vehicles pursuant

to the Guaranty and his subsequent failure to disclose this information, the circumstances under

which these facts arose, and the nature of the scheme.[9]  *See Henein*, 257 B.R. at 706.  The

Complaint also states facts that give rise to a strong inference of fraudulent intent, by "alleging

facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness,"

---

[9] The Complaint alleges that upon information and belief that the fraudulent scheme took place over the course of several months and several audits prior to its discovery in February 2009. Complaint at ¶ 32. Ippolito argues in the Motion to Dismiss that Honda's cause of action under § 523(a)(2)(A) must fail for it neglects to identify any misrepresentations, let alone the specific circumstances under which they arose.  Honda contends that this Court may relax Rule 9(b)'s particularity requirement for factual matters peculiarly within the defendant's control or knowledge, and attached to its Opposition is a copy of Ippolito's affidavit in opposition to Honda's motion to compel production of documents in Ippolito's main Chapter 7 case, in which Ippolito affies that all of Ippolito's business records for Crazy Freddy's were destroyed in 2010.  The factual information regarding the exact time and place of the alleged omissions/failure to disclose was peculiarly within Ippolito's knowledge, although Honda may have been able to subsequently discover the omissions upon conducting one or more audits.  Therefore, the Complaint contains a statement of facts adequate to apprise the defendant of the charges levied against him. *Campaniello Imports*, 117 F.3d at 664; *Rosen* 132 B.R. at 683.

*Acito*, 47 F.3d at 52, quoting *Shields*, 25 F.3d at 1128, and thus satisfies the second prong of Rule 9(b).

Based on the foregoing, Plaintiff's § 523(a)(2)(A) cause of action for false pretenses has been properly plead, but its claims for false representation and actual fraud have not.

### 3.  Dischargeability under 11 U.S.C. § 523(a)(4) - Larceny

Under § 523(a)(4), debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are excepted from discharge.  11 U.S.C. § 523(a)(4).  With respect to Honda's second cause of action under § 523(a)(4), Honda has only alleged that Ippolito committed larceny.  Accordingly, this Court will only analyze the second cause of action as it relates to "larceny," not as it relates to "embezzlement" or "for fraud or defalcation while acting in a fiduciary capacity."

As used in § 523(a)(4), "larceny" refers to "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner."  *Crossfield*, 2012 WL 3637919, at *6, quoting *In re Balzano*, 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991).  Larceny requires a showing of actual wrongful intent, *In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007), which must exist at the time of the original taking.  *Crossfield*, 2012 WL 3637919, at *6, citing *In re Scheller*, 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001).  In addition, a § 523(a)(4) cause of action must satisfy the heightened pleading standards of Rule 9(b).  *Santaro v. Sgroi*, 2010 WL 3825643, at *7 (N.D.N.Y. 2010); *In re Rosen*, 151 B.R. 648, 656 (Bankr. E.D.N.Y. 1993).

Honda's second cause of action under § 523(a)(4) fails to satisfy Rule 9 (b)'s heightened pleading requirements.  Specifically, the Complaint is devoid of sufficient allegations that Ippolito intentionally converted the loan advances or the "out of trust" vehicles from Honda at

the time of the original taking.  Therefore, Honda has failed to properly plead a cause of action for § 523(a)(4) larceny.

### 4.  Dischargeability under 11 U.S.C. § 523(a)(6) - Willful and Malicious Injury

Section 523(a)(6) provides that debts incurred "for willful and malicious injury by the debtor to another entity or the property of another entity" are not dischargeable.  11 U.S.C. § 523(a)(6).  The term "willful" means "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).  Reckless or negligent conduct will not satisfy § 523(a)(6)'s "willful" requirement. *See id.; In re Wisell*, 2011 WL 3607614, at *14 (Bankr. E.D.N.Y. Aug. 16, 2011).  Moreover, the term "malicious" has been defined by the Second Circuit to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  *In re Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996).

Malice may be implied by the debtor's conduct, *id.*at 88; implied or constructive malice may be found where the debtor's conduct has "no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor."  *In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998).  However, where a debtor's conduct has potential for economic gain or benefit, such as a knowing breach of contract, a creditor must sufficiently plead aggravating circumstances to satisfy § 523(a)(6)'s "malice" requirement.  *Id.*; *Khafaga*, 419 B.R. at 550; *see also In re Malycky*, 2011 WL 6740753, at *6 (Bankr. E.D.N.Y. 2011).  Aggravating circumstances must, "evidence[] conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code."  *In re Blankfort*, 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998).  The determination of whether sufficient aggravating

circumstances exist is made by looking to the totality of circumstances on a case-by-case basis. *Khafaga*, 419 B.R. at 550.

In *Khafaga*, the court found that a plaintiff had sufficiently pled aggravating circumstances under §523(a)(6) to overcome a Rule 12(b)(6) motion to dismiss by alleging facts that demonstrated the following: 1) the defendant's secret creation and operation of a competing business in his spouse's name in contravention of a franchise agreement; 2) the active diversion of business from the plaintiff-franchisor; 3) the failure to provide financial disclosures and information, even after demand by the plaintiff; and 4) the submission of false reports to the plaintiff with the intention of withholding royalties due to the plaintiff. *Id.* at 544, 552.  In reaching its conclusion, the *Khafaga* court considered that the factual record was largely undeveloped given that issue before it arose on a motion to dismiss under Rule 12(b)(6). *Id.* at 552.

Here, unlike in *Khafaga*, Honda has failed to meet its *Iqbal/Twombly* burden with respect to § 523(a)(6).  Specifically, even considering the largely undeveloped factual record, Honda has insufficiently pled facts demonstrating that the Defendant's conduct was malicious, and does not plead facts that demonstrate the requisite "aggravating circumstances."

### 5.  *Leave to Amend*

Rule 15, as incorporated by Bankruptcy Rule 7015, governs motions to amend pleadings and provides that, "the court should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a).  Leave to amend should be denied upon a showing of prejudice or bad faith, *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010), or where an amendment would be futile, *Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir. 2001), but not simply because a plaintiff has failed to file a formal motion, so long as the plaintiff has

clearly requested leave to amend. *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992);

*Khafaga*, 419 B.R. at 552-53.

Although Honda has not filed a formal motion to amend the Complaint, Honda

specifically requests in the Opposition it be allowed to amend in the event this Court determines

that one or more causes of action are insufficiently plead.  Moreover, this Court does not find

that Honda acted in bad faith, or that granting leave would be prejudicial to Ippolito, or futile to

Honda's case.  Accordingly, Honda's request for leave to amend is granted, as conditioned

herein.

### CONCLUSION

Based on the foregoing; it is hereby

**ORDERED**, that Defendant Ippolito's Motion to Dismiss is granted in part and denied in

part as set forth herein; and it is further

**ORDERED**, that the Motion to Dismiss is granted as to the first cause of action for

actual fraud and false representation under § 523(a)(2)(A), the second cause of action for larceny

under § 523(a)(4), and the third cause of action for willful and malicious injury under

§ 523(a)(6); and it is further

**ORDERED**, that the Motion to Dismiss is denied as to the first cause of action for false

pretenses under § 523(a)(2)(A); and it is further

**ORDERED**, that Honda may file and serve an amended complaint (the "Amended

Complaint") within **twenty one (21) days** from the entry of this Decision and Order, amending

its claims as to which the Motion to Dismiss is granted; failure to timely file an Amended

Complaint  will result in Honda's first cause of action for actual fraud and false representation

under § 523(a)(2)(A), Honda's second cause of action for larceny under § 523(a)(4), and

Honda's third cause of action for willful and malicious injury under § § 523(a)(6) being stricken; provided, however, that Honda may not amend its Complaint to allege any new causes of action under § 523; and it is further

ORDERED, that if an Amended Complaint is timely filed and served, the Defendant shall file a responsive pleading within **fourteen (14) days** from service of the Amended Complaint upon counsel for the Defendant.



Dated: March 6, 2013
     Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**